HONORABLE JAMES L. ROBART

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| TRACEY LIU and KRISTIE RUDHAM, each individually and on behalf of all others similarly situated,<br><br>                    *Plaintiffs*,<br><br>        v.<br><br>HOME DEPOT U.S.A., INC.,<br><br>                    *Defendant*. | Case No. 2:23-cv-01217-JLR<br><br>**Plaintiffs' Notice of Motion and Unopposed Motion for Final Approval of Class Action Settlement**<br><br>**Date: September 30, 2024**<br>**Time: 9:00 a.m.**<br>**Courtroom: 14106**<br><br>**Note on Motion Calendar: September 30, 2024** |

Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
(310) 656-7066

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on September 30, 2024, in Courtroom 14106 of the United States District Court for the Western District of Washington, located at 700 Stewart Street, Seattle, Washington 98101, Plaintiffs Tracey Liu and Kristie Rudham will and hereby do move this Court for entry of an order:

1. Finally certifying the Settlement Class for settlement purposes;

2. Finally approving the class action Settlement as fair, adequate, and reasonable.

This Motion is unopposed by Defendant Home Depot U.S.A., Inc. and is based on this Notice of Motion and Motion for Final Approval of Class Action Settlement; the Declarations of Simon Franzini and Anne-Marie Marra, filed concurrently herewith; all supporting exhibits filed herewith; all other pleadings and papers filed in this action; and any argument or evidence that may be presented at the hearing in this matter.

Dated: August 30, 2024

Respectfully submitted,

DOVEL & LUNER, LLP
By: */s/ Simon C. Franzini*
Simon C. Franzini (Cal. Bar No. 287631)\*
simon@dovel.com
Grace Bennett (Cal. Bar No. 345948)\*
grace@dovel.com
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: (310) 656-7069

Carson & Noel, PLLC
Wright A. Noel, WSBA No. 25264
20 Sixth Ave. NE
Issaquah WA 98027
Tel: 425-395-7786
Fax: 425-837-5396
Email: wright@carsonnoel.com

\*Admitted *Pro Hac Vice*

*Counsel for Plaintiffs*

Motion for Final Approval
Case No. 2:23-cv-01217-JLR

i

Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
(310) 656-7066

# Table of Contents

I.      Introduction. ...........................................................................................................1

II.     The Settlement. ......................................................................................................1

        A.      The Settlement Class. ...............................................................................1

        B.      Direct benefits to the Settlement Class. ..................................................2

        C.      Payment of administration costs, attorneys' fees, and incentive awards. .......................3

        D.      Programmatic relief. ................................................................................4

        E.      Limited release of claims. ........................................................................4

III.    Settlement administration and notice. ....................................................................4

        A.      The notice provided to Class Members. ...................................................4

        B.      The claims process. ..................................................................................6

        C.      Opt-outs and objections. ..........................................................................7

IV.     The Court should finally approve the Settlement. .................................................7

        A.      The Court should finally certify the Settlement Class. ............................7

        B.      The Settlement is fair, reasonable, and adequate. ....................................7

                1.      Rule 23(e)(2)(A): The Class Representatives and Class Counsel

                        adequately represented the Class's interests. ...............................8

                2.      Rule 23(e)(2)(B): The Settlement was negotiated at arm's length. ...................9

                3.      Rule 23(e)(2)(C): The Settlement provides excellent relief. ..............11

                4.      Rule 23(e)(2)(D): The Settlement treats Class Members equitably. ...............14

                5.      The Class's reaction to the Settlement was overwhelmingly positive. ............15

        C.      The notice plan fairly and adequately informed Class Members of the Settlement. ..17

V.      Conclusion. ...........................................................................................................17

Motion for Final Approval
Case No. 2:23-cv-01217-JLR

ii

Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
(310) 656-7066

## Table of Authorities

**Cases**

*Barr v. SelectBlinds LLC*,
2024 U.S. Dist. LEXIS 39068 (C.D. Cal. Mar. 4, 2024) ................................. 9, 12

*Beer v. GoBrands*, Inc.,
2024 U.S. Dist. LEXIS 93502 (C.D. Cal. Jan. 3, 2024) .................................13

*Broomfield v. Craft Brew All, Inc.*,
2020 U.S. Dist. LEXIS 74801 (N.D. Cal. Feb. 5, 2020) .................................11

*Californians for Disability Rights, Inc. v. Cal. Dep't. of Transp.*,
249 F.R.D. 334 (N.D. Cal. 2008) ..................................................................9

*Carideo v. Dell Inc.*,
2010 U.S. Dist. LEXIS 157985 (W.D. Wash. Sept. 13, 2010) ........................10

*Chun-Hoon v. McKee Foods Corp.*,
716 F. Supp. 2d 848 (N.D. Cal. 2010) .........................................................16

*Churchill Vill., L.L.C. v. Gen. Elec.*,
361 F.3d 566 (9th Cir. 2004) .................................................8, 11, 13, 15, 16, 17

*Class Plaintiffs v. City of Seattle*,
955 F.2d 1268 (9th Cir. 1992) ......................................................................8

*Clemans v. New Werner Co.*,
2013 U.S. Dist. LEXIS 167454 (W.D. Wash. Nov. 22, 2013) ........................15

*Dennis v. Kellogg Co.*,
2013 U.S. Dist. LEXIS 163118 (S.D. Cal. Nov. 14, 2013) ..............................5

*Edwards v. Nat'l Milk Producers Fed'n*,
2017 U.S. Dist. LEXIS 1452173 (N.D. Cal. June 26, 2017) ............................5

*Eisen v. Porsche Cars N. Am., Inc.*,
2014 U.S. Dist. LEXIS 14301 (C.D. Cal. Jan. 30, 2014) ................................10

Motion for Final Approval
Case No. 2:23-cv-01217-JLR

iii

Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
(310) 656-7066

*Elder v. Hilton Worldwide Holdings, Inc.,*

    2020 U.S. Dist. LEXIS 259476 (N.D. Cal. Apr. 29, 2020)...................................................13

*Ellis v. Costco Wholesale Corp.,*

    657 F.3d 970 (9th Cir. 2011)..........................................................................................................9

*Foos v. Ann, Inc.,*

    2013 U.S. Dist. LEXIS 136918 (S.D. Cal. Sep. 23, 2013) .........................................................12

*Garcia v. Harborstone Credit Union,*

    2023 U.S. Dist. LEXIS 201873 (W.D. Wash. Nov. 9, 2023) ......................................................13

*Hallman v. Wells Fargo Bank, N.A.,*

    2021 U.S. Dist. LEXIS 261788 (W.D. Wash. Mar. 2, 2021) .......................................................9

*Hanlon v. Chrysler Corp.,*

    150 F.3d 1011 (9th Cir. 1998)........................................................................................................8

*Hesse v. Sprint Corp.,*

    598 F.3d 581 (9th Cir. 2010)..........................................................................................................4

*In re Anthem, Inc. Data Breach Litig.,*

    327 F.R.D. 299 (N.D. Cal. 2018) ...................................................................................................7

*In re LinkedIn User Privacy Litig.,*

    309 F.R.D. 573 (N.D. Cal. 2015) .................................................................................................12

*In re Online DVD-Rental Antitrust Litig.,*

    779 F.3d 934 (9th Cir. 2015)..........................................................................................................7

*Jacobo v. Ross Stores, Inc.,*

    2019 U.S. Dist. LEXIS 247426 (C.D. Cal. Aug. 6, 2019) ..........................................................11

*Johnson v. Metro-Goldwyn-Mayer Studios Inc.,*

    2018 U.S. Dist. LEXIS 177824 (W.D. Wash. Oct. 16, 2018) ......................................................7

*Johnson v. MGM Holdings, Inc.,*

    794 F. App'x 584 (9th Cir. 2019) ..................................................................................................7

Motion for Final Approval
Case No. 2:23-cv-01217-JLR

iv

Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
(310) 656-7066

*Johnson v. MGM Holdings, Inc.,*

   943 F.3d 1239 (9th Cir. 2019) ................................................................................7

*Khan v. Boohoo.com USA, Inc., et al.,*

   No. 20-cv-3332-GW-JEMx (C.D. Cal.) ..............................................................15

*Linney v. Cellular Alaska P'ship,*

   151 F.3d 1234 (9th Cir. 1998) ..............................................................................10

*Lusk v. Five Guys Enters. LLC,*

   2022 U.S. Dist. LEXIS 180722 (E.D. Cal. Sept. 30, 2022) ................................11

*Me. State Ret. Sys. v. Countrywide Fin. Corp.,*

   13 U.S. Dist. LEXIS 179190 (C.D. Cal. Dec. 5, 2013) ......................................15

*Medeiros v. HSBC Card Servs.,*

   2017 U.S. Dist. LEXIS 178484 (C.D. Cal. Oct. 23, 2017) ................................12

*Munday v. Navy Fed. Credit Union,*

   2016 U.S. Dist. LEXIS 193973 (C.D. Cal. Sep. 15, 2016) ..................................7

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.,*

   221 F.R.D. 523 (C.D. Cal. 2004) ....................................................................9, 16

*Officers for Justice v. Civil Serv. Com.,*

   688 F.2d 615 (9th Cir. 1982) ..................................................................................8

*Peterson v. BSH Home Appliances Corp.,*

   2024 U.S. Dist. LEXIS 105624 (W.D. Wash. June 13, 2024) ..............................5

*Rodriguez v. W. Publ'g Corp.,*

   563 F.3d 948 (9th Cir. 2009) ................................................................................16

*Russell v. Kohl's Department Stores, Inc.,*

   2019 U.S. Dist. LEXIS 241132 (C.D. Cal. Feb. 22, 2019) ................................12

*Russell v. Kohl's Dep't Stores, Inc.,*

   755 F. App'x 605 (9th Cir. 2018) .........................................................................11

Motion for Final Approval
Case No. 2:23-cv-01217-JLR

v

Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
(310) 656-7066

*Schneider v. Chipotle Mexican Grill, Inc.,*

    336 F.R.D. 588 (N.D. Cal. 2020) ...................................................................16

*Shvager v. Viasat, Inc.,*

    2014 U.S. Dist. LEXIS 200808 (C.D. Cal. Mar. 10, 2014) .............................17

*Spann v. J.C. Penney Corp.,*

    314 F.R.D. 312 (C.D. Cal. 2016) .....................................................................14

*Steinberg v. Corelogic Credco, LLC,*

    2023 U.S. Dist. LEXIS 177325 (S.D. Cal. Oct. 2, 2023) ...............................15

*Taylor v. Shutterfly, Inc.,*

    2021 U.S. Dist. LEXIS 237069 (N.D. Cal. Dec. 7, 2021) ...............................17

*Williams v. Udemy, Inc.,*

    2023 Cal. Super. LEXIS 65128 (S.D. Super. Ct. Aug. 28, 2023) ...................12

**Rules**

Fed. R. Civ. P. 23(e)(2) ...........................................................................................8

Fed. R. Civ. P. 23(e)(2)(C) ...................................................................................11

Motion for Final Approval
Case No. 2:23-cv-01217-JLR

vi

Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
(310) 656-7066

## Memorandum of Points and Authorities

### I. Introduction.

The Parties reached a hard-fought class-wide settlement in this case. Under the Settlement, the Settlement Class will receive benefits worth over $19 million, with a direct benefit of at least $50 to each Class Member. This is an excellent outcome for the Class, especially given the significant risks presented by continued litigation.

On April 16, 2024, this Court reviewed the Amended Settlement Agreement and granted preliminary approval. Dkt. 31 ("Preliminary Approval Order") at 2-3. The Court found that the Settlement "satisfies the requirements of Rules 23(e)(1)(B) and 23(e)(2)" for preliminary approval and conditionally certified the Settlement Class. *Id.* Following preliminary approval, the Court-appointed Settlement Administrator faithfully executed the approved notice plan. *See generally* Marra Decl. Notice was near-universal and resulted in a healthy claims rate. Marra Decl. ¶24; *see* §§III(A)-(B) below. And the Class's reaction was overwhelmingly positive: out of a class of more than 300,000, only four Class Members opted out, and just one objected.

Every factor that the Court analyzed at preliminary approval favors final approval. Though the Court's review at preliminary approval was of course preliminary, the Court has already examined all of the material terms of the Settlement and considered most of the factors that must be considered at final approval under Rule 23(e)(2) and Ninth Circuit precedent. The only relevant factor not yet considered—the Class's reaction to the Settlement after the successful administration of notice—bolsters the Court's preliminary finding of the Settlement's fairness, reasonableness, and adequacy. Therefore, the Court should finally certify the Settlement Class and grant final approval of the Settlement.

### II. The Settlement.

#### A. The Settlement Class.

The Settlement Class, as conditionally certified at preliminary approval, consists of:

- All persons who, while in the State of California, purchased one or more products advertised as being subject to a purported discount on Defendant's websites Blinds.com, JustBlinds.com, and AmericanBlinds.com from January 26, 2020, to December 5, 2023

Motion for Final Approval
Case No. 2:23-cv-01217-JLR

1

Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
(310) 656-7066

("California Settlement Subclass"); and

- All persons who, while in the State of Washington, purchased one or more products advertised as being subject to a purported discount on Defendant's websites Blinds.com, JustBlinds.com, and AmericanBlinds.com from August 9, 2019, to December 5, 2023 ("Washington Settlement Subclass").

Preliminary Approval Order at 3; *see* Dkt. 26-1 ("Agreement") §I(FF). According to Defendant's records, there are 305,662 Class Members.[1] Marra Decl. ¶8.

**B.    Direct benefits to the Settlement Class.**

The Settlement Agreement requires Defendant to provide benefits worth more than $19 million to the Settlement Class. Franzini Decl. ¶19.

Each Settlement Class Member will receive at least $50—for a total of over $15 million—in one of two ways,[2] at the Class Member's election. Agreement §III(C)(3)-(4). Settlement Class Members who filed a claim will receive their payment in cash. Class Members who did not file a claim will automatically receive $50 in flexible website credit. *Id.* §III(C)(5). Because even Class Members who do not file a claim will receive compensation, 100% of the class will benefit from the Settlement.

To receive cash relief, Settlement Class Members had to submit a simple claim form online, or, if they preferred, by mail. *Id.* §IV(C). The claim form was conveniently available on the Settlement Website, and could be filled out and submitted completely online. *Id.* §IV(B)(5). Class Members could choose to receive cash payments through an electronic transfer service like PayPal, Venmo, or Zelle; via a prepaid MasterCard; or in the form of a physical check delivered by the Settlement Administrator. *Id.* §III(C)(3); *id.*, Ex. C (claim form). And, as discussed in greater detail below, the claims process resulted

---

[1] Defendant initially estimated that there were 310,000 Class Members. As explained in Plaintiffs' Motion for Attorneys' Fees, Costs, and Incentive Awards, upon reviewing the Class List for notice, the Parties learned that some of those included in Defendant's initial estimate were duplicates. Dkt. 32 ("Fee Motion").

[2] Class Members who elect to receive store credit will receive exactly $50 per Class Member. Because there will be funds left over after payment of the notice and administration costs, attorneys' fees and costs, and incentive awards (even assuming the Court grants the fee and incentive award requests in full), cash benefits will be adjusted upwards, meaning that Class Members who selected to receive their benefit in cash will receive more than $50. Franzini Decl. ¶18.

1    in a healthy claims rate. *See* §III(B) below.

2     Settlement Class Members who did not file a claim for cash relief will automatically receive a

3    highly flexible $50 store credit. Credits can be used on any purchase from any of Defendant's three

4    websites at issue in this case, Blinds.com, JustBlinds.com, and AmericanBlinds.com, with no exclusions

5    or restrictions "on the type of order, the products in the order, or anything else." Agreement §III(C)(5).

6    Credits are valid for three years and can be used at any time during that period, with no blackout dates,

7    affording Class Members an extended period of time to take advantage of their credits. *Id.* The credit

8    can also be combined with any other sale or promotion, stacked with other Settlement credits in a single

9    order, transferred, and resold. Agreement §III(C)(5).

10     Because Defendant sells numerous items for less than $50, Class Members receiving credits will

11    not have to pay Defendant any of their own money to use the credits. Franzini Decl. ¶20. Nor will they

12    have to pay out of pocket for shipping or taxes: Defendant offers free shipping in the continental

13    United States, and credits can be applied to any taxes on the order. *Id.*; Agreement §III(C)(5). Plus,

14    Defendant's sales records demonstrate that its customers place orders from Defendant frequently:

15    approximately half of Defendant's customers who placed an order during the class period had made at

16    least one other order within the last three years. Franzini Decl. ¶20. This indicates that approximately

17    half the class likely would have made another purchase from Defendant in the next three years

18    regardless of the Settlement, meaning that they will be able to apply their settlement credit to a purchase

19    they were going to make anyway. And, again, Class Members who preferred to receive their Settlement

20    Benefit in cash rather than store credit had the opportunity to file a claim for cash relief. Indeed,

21    thousands of Class Members did just that. *See* §III(B) below.

22     **C. Payment of administration costs, attorneys' fees, and incentive awards.**

23     On top of the benefits that will be provided to class members discussed above, the Settlement

24    provides that Defendant will pay an additional amount to cover notice and administration costs,

25    attorneys' fees and costs, and incentive awards, as approved by the Court. Agreement §III(E)(1)-(2). The

26    total value of the Settlement is more than $19 million once those additional benefits are factored in.

27     As initially presented to the Court at preliminary approval, notice and administration costs to be

Motion for Final Approval      3    Dovel & Luner, LLP
Case No. 2:23-cv-01217-JLR            201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
(310) 656-7066

1    paid out of the Settlement fund will total $54,000. Marra Decl. ¶25; Dkt. 26 ("Preliminary Approval

2    Motion") at 6.

3         In addition, Class Counsel requested a fee award of $3,500,000 and costs of $50,279.85. Dkt. 32

4    ("Fee Motion") at 1. The requested fee award amounts to less than 18% of the total Settlement value,

5    far less than the Ninth Circuit's 25% benchmark for fee awards in class actions. *Id.* at 4-8; *see* Franzini

6    Decl. ¶14 (explaining that the requested fee award is a slightly lower percentage than it was estimated to

7    be in the fee motion.) And the request is supported by each of the factors used to assess the

8    reasonableness of attorneys' fees. Fee Motion at 8-14; *see* Franzini Decl. ¶¶26-29 (lodestar cross-check

9    confirms reasonableness). The requested reimbursement of litigation and settlement expenses is also

10   reasonable. *Id.* at 20.

11        Class Counsel also requested incentive awards of $2,500 each for the two Class Representatives.

12   *Id.* at 20-21. Such awards are justified to compensate the Class Representatives for their crucial service to

13   the Class. *Id.*

14   **D.    Programmatic relief.**

15        In addition to the monetary relief outlined above, Plaintiffs' lawsuits also led to programmatic

16   relief in the form of changes to Defendant's price advertising. Defendant represented that, in response

17   to Plaintiffs' lawsuits, it modified the frequency and nature of the promotions offered on its websites to

18   ensure compliance with California and Washington consumer protection laws. Agreement §III(C)(6).

19   **E.    Limited release of claims.**

20        The Settlement Agreement provides a narrowly tailored release of only those claims that "were

21   alleged in the operative complaint" or that "arise from the same facts and claims alleged" in the

22   Complaint. Agreement §III(D)(1). In other words, the released claims are "based on the identical factual

23   predicate as that underlying the claims in the settled class action." *Hesse v. Sprint Corp.*, 598 F.3d 581, 590

24   (9th Cir. 2010). Thus, the release is sufficiently limited and not overly broad.

25   **III.  Settlement administration and notice.**

26   **A.    The notice provided to Class Members.**

27        Simpluris Inc., the Court-appointed Settlement Administrator, administered notice to the

Settlement Class in substantially the same form and content approved by the Court at preliminary approval. Preliminary Approval Order at 3 (approving the proposed notice plan); *id.* at 4 (appointing Simpluris as the Settlement Administrator and directing Simpluris to implement the notice plan). First, Simpluris collected a Class List consisting of names, emails, and addresses from Defendant. Marra Decl. ¶7. After the list was reviewed for potential duplicates, a total of 305,662 unique Class Members were identified. *Id.* ¶8. Simpluris then used this list to send email notice to all Class Members for whom a valid email address was in Defendant's possession or could be found. Marra Decl. ¶¶9-10 (describing the details of this process). The email notice provided an explanation of the nature of the claims asserted in the lawsuit, a summary of the Settlement terms, and a statement about the release of claims. Agreement, Ex. A (email notice). The notice also provided instructions on how Class Members could file a claim for a cash payment and how they could opt out of or object to the Settlement, along with the respective deadlines to do so. *Id.* In total, email notice was successfully delivered to 286,120 Class Members. Marra Decl. ¶13.

Where email notice failed, Simpluris provided mail notice to the Class Member's shipping address associated with their most recent purchase from Defendant to a California or Washington address. *Id.* ¶11; Agreement, Ex. D (postcard notice). Mail notice was successfully delivered to 20,250 Class Members, in this manner. Marra Decl. ¶13.

In total, direct notice was successful for more than 99% of the Class. *Id.* This near-universal notice is an outstanding result, far more than is required. *See Edwards v. Nat'l Milk Producers Fed'n*, 2017 U.S. Dist. LEXIS 1452173, at *19 (N.D. Cal. June 26, 2017) ("[N]otice plans estimated to reach a minimum of 70 percent are constitutional and comply with Rule 23."); *Dennis v. Kellogg Co.*, 2013 U.S. Dist. LEXIS 163118, at *18 (S.D. Cal. Nov. 14, 2013) ("Rule 23 only requires that the notice be the 'best practicable under the circumstances.' It need not be perfect." (citations omitted)); *see, e.g., Peterson v. BSH Home Appliances Corp.*, 2024 U.S. Dist. LEXIS 105624 (W.D. Wash. June 13, 2024) (finding notice sufficient where it reached 71% of the class).

To ensure that Class Members who intended to file a claim for cash remembered to do so prior to the deadline, the Parties requested that Simpluris disseminate a second round of email notice. Marra

Motion for Final Approval
Case No. 2:23-cv-01217-JLR

5

Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
(310) 656-7066

Decl. ¶14. This reminder email provided clear instructions on how to file a claim, along with the relevant deadline, and the Settlement Administrator's information (along with the Settlement Website) in case Class Members had questions. Marra Decl., Exhibit D (showing the reminder email). This second round of email notice was disseminated approximately a month before the Claim Deadline, so that class members had ample time to submit a claim for cash if they wanted. *Id.* ¶14.

In addition to disseminating direct notice, Simpluris designed and hosted a Settlement Website containing all relevant information about the Settlement. Marra Decl. ¶15. The Website provides access to relevant documents concerning the Settlement, including the Settlement Agreement, the Preliminary Approval Order, and, after it was filed, Plaintiffs' Motion for Attorneys' Fees, Costs, and Incentive Awards (and all accompanying documents).[3] It also includes a page dedicated to answering "Frequently Asked Questions," including about the claims in the lawsuit, the Settlement benefits, the process to file a claim form, the steps to opt out of or object to the Settlement, and Class Counsel's role in the Settlement and requested fees.[4] And it offers a fillable version of the claim form that Class Members could easily complete and submit online.[5] In case Class Members have additional questions, the Settlement Website, as well as the distributed notice forms, lists the contact information for the Settlement Administrator, including the number of a toll-free hotline that has run 24 hours a day, 7 days a week since notice was first disseminated. Marra Decl. ¶16.

**B.      The claims process.**

As explained above, Settlement Class Members had the option to file a claim form to receive cash relief. The claim form was simple to fill out, did not require any additional proof of purchase, and could be submitted online or by mail. Agreement, Ex. C. 10,509 Class Members filed valid claims, resulting in a cash benefit claims rate of approximately 3.4%. *See* Marra Decl. ¶24. This claim rate compares favorably to claims rates in other settlements that courts in this Circuit have finally approved, which confirms the success of the notice program. *Munday v. Navy Fed. Credit Union*, 2016 U.S. Dist.

---

[3] The documents page of the Settlement Website is available at
https://blindsclassactionsettlement.com/documents.
[4] The FAQ page is available at https://blindsclassactionsettlement.com/faq.
[5] The online claim form is available at https://blindsclassactionsettlement.com/form/claim.

LEXIS 193973, at *23 n.1 (C.D. Cal. Sep. 15, 2016) ("[D]istrict courts have recognized that '[t]he prevailing rule of thumb with respect to consumer class actions is [a claims rate of] 3-5 percent.'"); *see, e.g.*, *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 944-45 (9th Cir. 2015) (affirming approval of settlement where less than 3.4% of class members filed claims); *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 321 (N.D. Cal. 2018) (1.8% claims rate); *Johnson v. Metro-Goldwyn-Mayer Studios Inc.*, 2018 U.S. Dist. LEXIS 177824, at *10 (W.D. Wash. Oct. 16, 2018) (0.21% claims rate), *aff'd sub nom. Johnson v. MGM Holdings, Inc.*, 943 F.3d 1239 (9th Cir. 2019); 794 F. App'x 584 (9th Cir. 2019). And it is especially impressive considering that receiving a cash benefit was only one form of benefit available under the settlement: Class Members who do not file a claim at all will still receive a credit benefit—which would be expected to lead to a lower claims rate compared to cases where it is necessary to file a claim to get any relief whatsoever.

### C.    Opt-outs and objections.

As explained above, Settlement Class Members were provided clear and specific instructions on how to opt out of or object to the Settlement, in both direct notice forms and on the Settlement Website. And of the 305,662 Class Members, only four requested to be excluded from the Settlement, and only one filed an objection. Marra Decl. ¶¶ 17-19; *see* §IV(B)(5) below (discussing this in detail). In other words, more than 99.99% of the Settlement Class chose to remain in the Settlement Class without any objection.

## IV.    The Court should finally approve the Settlement.

### A.    The Court should finally certify the Settlement Class.

In granting preliminary approval, the Court preliminarily certified the class, as defined in the Settlement Agreement, "for the purposes of settlement pursuant to Rules 23(a) and 23(b)(3)." Preliminary Approval Order at 3. No circumstances have changed since then that would justify altering that decision, so the Court should reach the same conclusion here for all the reasons set forth in the Court's Preliminary Approval Order.

### B.    The Settlement is fair, reasonable, and adequate.

A court may approve a class action settlement "only on finding that it is fair, reasonable, and

adequate." Fed. R. Civ. P. 23(e)(2). To determine whether a settlement is fair, reasonable, and adequate, a court must consider whether: "(A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other." *Id.* In the Ninth Circuit, this inquiry can also include the following similar factors from the Circuit's decision in *Churchill*: "(1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement." *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).

"The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claims advanced, the types of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Justice v. Civil Serv. Com.*, 688 F.2d 615, 625 (9th Cir. 1982). And in weighing the factors, courts must remember that "[s]ettlement is the offspring of compromise; the question ... is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998); *see Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) ("[S]trong judicial policy . . . favors settlements, particularly where complex class action litigation is concerned.").

Here, Class Counsel negotiated an excellent settlement that is fair, adequate, and free from collusion. All relevant factors weigh in favor of final approval.

### 1.   Rule 23(e)(2)(A): The Class Representatives and Class Counsel adequately represented the Class's interests.

To determine whether a class has been adequately represented, "courts must resolve two

Motion for Final Approval
Case No. 2:23-cv-01217-JLR

8

Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
(310) 656-7066

questions." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011). First, "do the named plaintiffs and their counsel have any conflicts of interest with other class members?" *Id.* And second, have "the named plaintiffs and their counsel prosecute[d] the action vigorously on behalf of the class?" *Id.* "Adequate representation is usually presumed in the absence of contrary evidence." *Californians for Disability Rights, Inc. v. Cal. Dep't. of Transp.*, 249 F.R.D. 334, 349 (N.D. Cal. 2008).

Here, neither the Class Representatives, nor Class Counsel, have any conflicts of interest with absent Class Members. Dkt. 28 ("Liu Decl.") ¶7; Dkt. 29 ("Rudham Decl.") ¶7; Franzini Decl. ¶9. And both Counsel and the Class Representatives vigorously prosecuted this action on behalf of the Class. Liu Decl. ¶8; Rudham Decl. ¶8; Franzini Decl. ¶¶10-12. Before even filing a case, Class Counsel conducted a thorough investigation into Defendant's sales and pricing. Franzini Decl. ¶12. And, after filing Plaintiffs' cases, Counsel vigorously prosecuted them—in the California case, to the brink of class certification— and undertook significant legal research and analysis to fully understand the strength of Plaintiffs' claims, worked with multiple experts to prepare theories and reports for class certification, served extensive discovery requests, conducted an extensive review of documents produced by Defendant, and developed multiple class-wide damages models. *Id.* ¶¶ 10-12. Plus, "Class Counsel has 'particular expertise and substantial experience' with 'fake discount' class actions, like the one alleged in this case, that involve online retailers advertising purportedly time-limited discounts, when in fact, their products are always discounted." *Barr v. SelectBlinds LLC*, 2024 U.S. Dist. LEXIS 39068, at *16 (C.D. Cal. Mar. 4, 2024). And Counsel drew on this extensive experience in litigating this action and negotiating the Settlement. Franzini Decl. ¶¶3-7; *see Hallman v. Wells Fargo Bank, N.A.*, 2021 U.S. Dist. LEXIS 261788, at *8 (W.D. Wash. Mar. 2, 2021) (Robart, J.) (finding adequacy satisfied where "Class Counsel [had] significant class action litigation experience, [and was] knowledgeable about the applicable law").

Thus, the Class Representatives and Class Counsel adequately represented the Settlement Class. This factor weighs in favor of final approval.

### 2. Rule 23(e)(2)(B): The Settlement was negotiated at arm's length.

"A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004). And here, the

Motion for Final Approval
Case No. 2:23-cv-01217-JLR

9

Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
(310) 656-7066

Settlement was the product of arm's length negotiation between the Parties after substantial evaluation of the strength of the claims and the risk associated with continued litigation.

Class Counsel entered mediation only after an extensive analysis of the case and both formal and informal discovery. *See Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998) ("[F]ormal discovery is not a necessary ticket to the bargaining table where the parties have sufficient information to make an informed decision about settlement.")(internal quotations omitted). In the *Rudham* case, both Parties served initial disclosures, Plaintiff served extensive requests for production and interrogatories, and the Parties met and conferred and corresponded in writing regarding discovery issues. Franzini Decl. ¶11; Agreement §II(C). Class Counsel also worked extensively with experts and worked up the case in the lead up to class certification.[6] After agreeing to mediate, the Parties also exchanged additional discovery, including voluminous and detailed financial and sales records. Franzini Decl. ¶12; Agreement §II(C). Class Counsel analyzed these records and used them to put together several damages models, which were shared with Defendant. Franzini Decl. ¶12. And both Parties prepared comprehensive mediation briefs discussing their positions on liability and damages. *Id.*

The Parties' negotiations were arduous, and included multiple in-person mediation sessions and months of discussion. *Id.* ¶13. To guide the mediations, the Parties enlisted the services of an experienced mediator, Bruce Friedman of JAMS. *Id.* ¶12. The enlistment of a private mediator further shows that the Settlement was negotiated at arm's length, and without any collusion. *Eisen v. Porsche Cars N. Am., Inc.*, 2014 U.S. Dist. LEXIS 14301, at *14 (C.D. Cal. Jan. 30, 2014) (collecting cases) ("[W]here the services of a private mediator are engaged, this fact tends to support a finding that the settlement valuation by the parties was not collusive."); *Carideo v. Dell Inc.*, 2010 U.S. Dist. LEXIS 157985, at *10 (W.D. Wash. Sept. 13, 2010) (Robart, J.) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive."). Indeed, the Settlement itself came as a result of a mediator's proposal. *See Lusk v. Five Guys Enters. LLC*, 2022 U.S. Dist. LEXIS 180722, at *23-24 (E.D.

---

[6] In the California case, Plaintiff's Motion for Class Certification was less than three weeks away when the Parties agreed to mediate and extend the schedule to allow them to focus on mediation. Franzini Decl. ¶11.

Cal. Sept. 30, 2022) ("The fact that the parties engaged in mediation and that the Settlement is based on a mediator's proposal further supports a finding that the settlement agreement is not the product of collusion.").

In short, the Settlement resulted from contentious, arm's length negotiations. So, this factor weighs in favor of final approval.

### 3.    Rule 23(e)(2)(C): The Settlement provides excellent relief.

In considering whether to grant final approval, "[t]he relief that the settlement is expected to provide to class members is a central concern" under both Rule 23(e) and Ninth Circuit precedent. *Broomfield v. Craft Brew All, Inc.*, 2020 U.S. Dist. LEXIS 74801 at *26 (N.D. Cal. Feb. 5, 2020); *see* Fed. R. Civ. P. 23(e)(2)(C); *Churchill*, 361 F.3d at 575 (listing "the amount offered in settlement" as a factor for courts to consider at final approval). Here, the Settlement affords the Settlement Class excellent relief, especially when balanced against the risks and expense of continued litigation. This factor therefore strongly weighs in favor of approval.

As described in greater detail above, the Settlement provides direct benefits worth at least $50 to each of the 305,662 Class Members, in either cash or store credit, at their election. *See* §II(B) above; Franzini Decl. ¶17. And in addition to this direct relief, the Settlement requires Defendant to cover notice and administration costs, attorneys' fees and costs, and incentive awards. Agreement §I(F). When this is factored in, the total value of the benefits created by the Settlement is more than $19 million. Franzini Decl. ¶19; *see Broomfield*, 2020 U.S. Dist. LEXIS 74801, at *80 (to calculate the value of a settlement for purposes of evaluating fees, "the Ninth Circuit and courts in this district have included attorneys' fees, settlement administration costs, and litigation expenses" in the total value); Fee Motion at 4-8 (discussing the value of the Settlement). This is an outstanding recovery for Class Members, both individually and in the aggregate, and compares favorably to many settlements approved in this Circuit in similar cases. *See e.g.*, *Jacobo v. Ross Stores, Inc.*, 2019 U.S. Dist. LEXIS 247426, at *10 (C.D. Cal. Aug. 6, 2019) (granting approval of settlement of case alleging deceptive price advertising which provided $4.85 million in total relief to a class of almost 4 million, resulting in payments of only $10.45 in store credit to only those who filed claims); *Russell v. Kohl's Dep't Stores, Inc.*, 755 F. App'x 605, 608 (9th Cir. 2018)

(affirming approval of settlement of case alleging deceptive price advertising which provided $6.15 million in total relief to a class of over 8.8 million, resulting in payouts of only approximately $10 in gift cards to only those who filed claims); *Russell v. Kohl's Department Stores, Inc.*, 2019 U.S. Dist. LEXIS 241132 (C.D. Cal. Feb. 22, 2019), Dkt. 86-1 (final approval motion describing that settlement); *Williams v. Udemy, Inc.*, 2023 Cal. Super. LEXIS 65128, at *2 (S.D. Super. Ct. Aug. 28, 2023) (granting approval of settlement of case alleging deceptive price advertising that provided for $4 million in total relief to a class of more than 7 million, and only $4 per purchase to only those who filed claims); *see Medeiros v. HSBC Card Servs.*, 2017 U.S. Dist. LEXIS 178484, at *14 (C.D. Cal. Oct. 23, 2017) ("Because the amount offered in settlement compares favorably to other CIPA class action settlements, the Court finds that the settlement in this case is fair, adequate, and reasonable."); *In re LinkedIn User Privacy Litig.*, 309 F.R.D. 573, 588 (N.D. Cal. 2015) (granting final approval where "the amount of the agreed-upon settlement fund compare[d] favorably to that of other similar class actions.").

Importantly, this is not a "claims made" settlement with where the total value will only need to be paid out if everybody files a claim. Instead, the Settlement is non-reversionary; and each Class Member will be sent the settlement benefit they are owed, whether they file a claim or not. Nor is the Settlement a disfavored "coupon" settlement. *See Barr v. SelectBlinds LLC*, 2024 U.S. Dist. LEXIS 39068, at *35 n.3 (C.D. Cal. Mar. 4, 2024) (holding that a settlement of a materially similar case against one of Defendant's major competitors that was structured in a nearly identical manner as the one here—with class members receiving store credit by default or cash if they filed a claim—was not a coupon settlement and explaining why); *see* Response to Objection (filed concurrently herewith) (addressing this in greater detail). Instead, the Settlement provides meaningful and flexible store credit that can be used to purchase products without Class Members spending any of their own money. Franzini Decl. ¶20 (explaining that Defendant sells numerous products for less than the credit value of $50); Fee Motion at 5-6 (discussing this); *see Foos v. Ann, Inc.*, 2013 U.S. Dist. LEXIS 136918, at *6 (S.D. Cal. Sep. 23, 2013) ($15 Ann Taylor vouchers were not coupons because they allowed class members "to obtain $15.00 of free merchandise"). The credits can be used to purchase any product across Defendant's three websites at issue in this case, they can be combined with any promotions or discounts, they are transferable, they

Motion for Final Approval
Case No. 2:23-cv-01217-JLR

12

Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
(310) 656-7066

are stackable, and they can be used at any point in a three-year period without any blackout dates or restrictions. Agreement §III(C)(5); *see Elder v. Hilton Worldwide Holdings, Inc.*, 2020 U.S. Dist. LEXIS 259476, at *15 (N.D. Cal. Apr. 29, 2020) (holding that hotel certificates that expired after one year were not coupons); *Morey*, 2014 U.S. Dist. LEXIS 3331 at *22 (distinguishing vouchers and coupons and holding that $41 merchandise vouchers that expired in one year were not coupons). Plus, as explained above, due to the high proportion of Class Members who make repeated purchases from Defendant, Class Members are likely to be able to use their credit to make a purchase (or obtain $50 off a larger purchase) that they were going to make anyway. Franzini Decl. ¶20. And, in any event, if Class Members did not want to purchase more products from Defendant's websites, they could easily file a claim for cash. *See Beer v. GoBrands*, Inc., 2024 U.S. Dist. LEXIS 93502, at *25 n.6 (C.D. Cal. Jan. 3, 2024) (settlement that provided store credit by default was "not a coupon settlement" because class members could instead choose to receive cash).

The factors enumerated in Rule 23(e)(2)(C), and the related factors listed in the Ninth Circuit's decision in *Churchill*, confirm that the Settlement provides excellent relief and warrants final approval.[7] First, continued litigation would have presented substantial risks, costs, and delay. *See Churchill*, 361 F.3d at 575 (courts should consider the strength of the plaintiffs' case, the risk, expense, complexity, and likely duration of further litigation, and the risk of maintaining class action status throughout the trial). While Class Counsel remains very confident in the strength of the claims, they are also very familiar with the factual and legal issues presented cases alleging deceptive price advertising like this one, both on the merits and in terms of class certification. Franzini Decl. ¶24; Preliminary Approval Motion at 15 (collecting cases where cases alleging deceptive price advertising have been dismissed at every stage of litigation and have been denied class certification multiple times). And even if Plaintiffs prevailed in certifying a class, continued litigation through summary judgment, trial, and any appeals "would be costly and time consuming, only adding to the benefit to class members of early settlement in this case." *Garcia v. Harborstone Credit Union*, 2023 U.S. Dist. LEXIS 201873, at *17-18 (W.D. Wash. Nov. 9, 2023).

---

[7] The Rule 23(e)(2)(C) factors are discussed in greater detail in Plaintiffs' Preliminary Approval Motion. *See* Preliminary Approval Motion at 13-16.

Second, the Settlement provides for a simple and streamlined method of distributing relief that ensures all Class Members receive the relief they are due: store credit will be provided automatically, and all Class Members had the opportunity to instead select a cash benefit through a simple and readily accessible claim form. *See* §§ II(B), III(B) above. Third, Class Counsel seeks a fee award of less than 18% of the total Settlement value. *See generally* Fee Motion (providing Counsel's fee award request and explaining in detail why it is reasonable); Franzini Decl. ¶14 n. 1. Such an award is well below the Ninth Circuit's 25% benchmark, and is justified by Counsel's extensive and diligent work on the case. Franzini Decl. ¶¶ 25-28. Plus, there are no signs of collusion with respect to the fee award. Fees were not negotiated at all as part of the Settlement; instead, Class Counsel (unilaterally) agreed to limit their fee request to no more than $3.5 million.  Plus, Defendant was free to challenge Counsel's request. And there is no "kicker" clause: if the Court awards less than the full amount requested by Class Counsel, unawarded fees will be distributed pro-rata to Settlement Class Members who file a claim to receive their settlement benefit in cash. Preliminary Approval Motion at 10-11. Finally, there are no agreements that need to be identified under Rule 23(e)(3).

### 4.      Rule 23(e)(2)(D): The Settlement treats Class Members equitably.

Here, the Settlement does not improperly prioritize the Class Representatives. Class Counsel has requested modest incentive awards of $2,500 to compensate each Plaintiff for her service to the Class. *See* Fee Motion at 21. And the requested awards—together amounting to less than 0.1% of the Settlement's total monetary value—are justified in light of Plaintiffs' diligence and dedication to the case. *Id.*; Liu Decl. ¶8; Rudham Decl. ¶8. Plus, because the Settlement is not contingent on the Court's approval of the incentive awards, no conflict of interest arises between the Class Representatives and the rest of the Class. Agreement §III(E)(1); Liu Decl. ¶9; Rudham Decl. ¶9; *see Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 328-29 (C.D. Cal. 2016) ("[B]ecause the parties agree that the Settlement Agreement shall remain in force regardless of any service awards, the awards here are unlikely to create a conflict of interest between the named plaintiffs and absent class members.").

The Settlement also does not improperly favor any one segment of the Class. Class Members are entitled to the same benefits under the Settlement regardless of whether they belong to the California

Subclass or the Washington Subclass, and regardless of which of Defendant's websites they purchased from. Agreement §III(C)(1). And every Class Member was provided with the exact same choice of a $50 store credit or cash payment. *Id.*; *see Steinberg v. Corelogic Credco, LLC*, 2023 U.S. Dist. LEXIS 177325, at *20-21 (S.D. Cal. Oct. 2, 2023) (settlement did not grant preferential treatment where "every participating settlement class member [would] receive equal payments."); *Jacobo*, 2019 U.S. Dist. LEXIS 247426 (finally approving settlement of a case alleging deceptive price advertising that distributed a voucher of the same amount to each class member who filed a claim); *Khan v. Boohoo.com USA, Inc., et al.*, No. 20-cv-3332-GW-JEMx, Dkt. 199 (C.D. Cal. Dec. 16, 2022) at 1 (finally approving settlement of a case alleging deceptive price advertising that distributed a flat $10 voucher to each class member) (tentative order granting final approval of settlement); *id.* at Dkt. 200 (C.D. Cal. Dec. 19, 2022) at 1 (granting final approval based on the tentative). Thus, the Settlement treated Class Members equitably and this factor should weigh in favor of final approval.

### 5.    The Class's reaction to the Settlement was overwhelmingly positive.

"The reaction of class members to a proposed settlement is an important factor in determining whether a settlement is fair, adequate, and reasonable." *Clemans v. New Werner Co.*, 2013 U.S. Dist. LEXIS 167454, at *15 (W.D. Wash. Nov. 22, 2013); *see Churchill*, 361 F.3d at 575 (listing "the reaction of the class members to the proposed settlement" as a factor for courts to consider at final approval). The positive reaction of "the named class representative[s]," a "scarcity of objections and requests to opt out of the Settlement," and the class's "participation in the Settlement" are "strong indications of Class Members' support for the Settlement as fair, adequate, and reasonable. *Clemans*, 2013 U.S. Dist. LEXIS 167454, at *16-17. Here, all three are present, and weigh in favor of final approval.

First, the reaction of the Class Representatives was very positive. Both favor the Settlement and believe that it is in the best interests of the Class. Liu Decl. ¶7; Rudham Decl. ¶7; *see Me. State Ret. Sys. v. Countrywide Fin. Corp.*, 13 U.S. Dist. LEXIS 179190, at *63 (C.D. Cal. Dec. 5, 2013) ("Courts afford special weight to the opinions of class representatives because their views may be important in shaping the agreement and they may have a better understanding of the case than most members of the class." (internal quotations omitted)).

Motion for Final Approval
Case No. 2:23-cv-01217-JLR
15
Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
(310) 656-7066

The reaction of absent Class Members was also overwhelmingly positive. Only one Class Member out of 305,662 objected to the Settlement.[8] Marra Decl. ¶18; *see Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004) ("It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members."); *see, e.g., Churchill*, 361 F.3d at 577 (affirming approval of a settlement where the district court received 45 objections from 90,000 class members who had received notice); *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 967 (9th Cir. 2009) (affirming approval where the district court found 54 objections out of 376,301 class members represented "a favorable reaction to the settlement among class members"). And only four Class Members—representing approximately 0.001% of the Class—requested to be excluded from the Settlement. Marra Decl. ¶18. Such a response indicates an overwhelmingly positive reaction from the Class. *See, e.g., Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 852 (N.D. Cal. 2010) (finding class reaction to be "overwhelming[ly] positive" and "support[ing] settlement" where 4.86% of the class opted out); *Churchill*, 361 F.3d at 577 (affirming approval where 500 of 90,000 notified class members opted out of the settlement). And this is especially true here because the Settlement provided for a robust and effective notice plan. As explained above, more than 99% of Class Members received direct notice by either email or mail. *See* §III(A) above. As a result, Class Members were well aware of the Settlement and how to opt out or object.

That the Class engaged with and approves of the Settlement is also shown by the cash benefit claims rate. As discussed above, approximately 3.4% of the Class submitted claims for cash relief. This is a healthy rate in a consumer class action (especially one where Class Members do not need to file a claim to receive relief), and further shows that Class Members approve of and chose to engage with the Settlement. *See Schneider v. Chipotle Mexican Grill, Inc.*, 336 F.R.D. 588, 599 (N.D. Cal. 2020) ("Here, the 0.83% claims rate (which represents the estimated size of the targeted population of potential class members compared to the actual claim submissions) is on par with other consumer cases."); *Taylor v.*

---

[8] Consistent with the Court's Preliminary Approval Order, Class Counsel will address the sole objection in a separately response, filed concurrently.

Motion for Final Approval
Case No. 2:23-cv-01217-JLR

16

Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
(310) 656-7066

*Shutterfly, Inc.*, 2021 U.S. Dist. LEXIS 237069, at \*21 (N.D. Cal. Dec. 7, 2021) (approving Settlement with an "overwhelmingly positive [class] response" where there was a cash claims rate of approximately 2.5%).

In short, the Class's reaction to the Settlement was overwhelmingly positive. And this weighs heavily in favor of final approval of the Settlement.

* * *

Each of the factors considered by courts in evaluating proposed class settlements at final approval confirms that the Settlement reached in this case is fair, reasonable, and adequate.[9] The Court should therefore finally approve the Settlement.

**C.    The notice plan fairly and adequately informed Class Members of the Settlement.**

In preliminarily approving the Settlement, the Court found that the proposed form and content of notice was "reasonably calculated to apprise the settlement class members of the pendency of this action, the terms of the amended settlement agreement, and their rights to object to and exclude themselves from the class." Preliminary Approval Order at 3. As described above, Simpluris implemented the notice plan approved by the Court. *See* §III(A) above. Thus, the notice process fairly and adequately informed Settlement Class Members of the nature of the action and the terms of the Settlement.

**V.    Conclusion.**

For the foregoing reasons, the Motion should be granted.

---

[9] Courts also consider "the presence of a governmental participant." *Churchill*, 361 F.3d at 575. Here, this factor is largely "inapplicable and neutral because no government entity participated in the case." *Shvager v. Viasat, Inc.,* 2014 U.S. Dist. LEXIS 200808, at \*31 (C.D. Cal. Mar. 10, 2014).

Dated: August 30, 2024

Respectfully submitted,

DOVEL & LUNER, LLP

By: /s/ Simon Franzini

Simon C. Franzini (Cal. Bar No. 287631)*
simon@dovel.com
Grace Bennett (Cal. Bar No. 345948)*
grace@dovel.com
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: (310) 656-7069

Carson & Noel, PLLC
Wright A. Noel, WSBA No. 25264
wright@carsonnoel.com
20 Sixth Ave. NE
Issaquah WA 98027
Telephone: (425) 395-7786
Facsimile: (425) 837-5396

*Admitted *Pro Hac Vice*

*Counsel for Plaintiffs*

### Attestation of Compliance

I certify that this memorandum contains 6,618 words, in compliance with Local Civil Rules.

By: /s/ Simon Franzini
Simon Franzini

Motion for Final Approval
Case No. 2:23-cv-01217-JLR

18

Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
(310) 656-7066