UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| TRACEY LIU, et al., | CASE NO. C23-1217JLR |
| Plaintiffs, | ORDER |
| v. | |
| HOME DEPOT USA, INC., | |
| Defendant. | |

## I.   INTRODUCTION

Before the court are (1) Plaintiffs Tracey Liu and Kristie Rudham's (together, "Plaintiffs") unopposed motion for final approval of their proposed class action settlement with Defendant Home Depot USA, Inc. ("Defendant") (Approval Mot. (Dkt. # 35)) and (2) Plaintiffs' unopposed motion for attorneys' fees, costs, and incentive awards (Fees Mot. (Dkt. # 32)). The court heard from the parties at a final approval hearing on September 30, 2024, where it determined that the settlement satisfies the requirements set forth in Federal Rule of Civil Procedure 23(e). (*See* 9/30/24 Min. Entry

1   (Dkt. # 42).)  Being fully advised, the court GRANTS the motion for final approval for

2   the reasons set forth on the record during the September 30, 2024 hearing; GRANTS

3   Class Counsel's requests for costs and incentive awards in their entirety, and GRANTS

4   IN PART Class Counsel's motion for attorneys' fees.  Below, the court addresses the

5   objections filed by California attorney Michael Geller (Obj. (Dkt. # 34)) and Class

6   Counsel's request for an award of attorneys' fees.[1]

## II.   OBJECTIONS

For the reasons stated on the record during the September 30, 2024 hearing, the court finds that the relief offered to the Settlement Class is fair, reasonable, and adequate. As the court noted at the hearing, Mr. Geller raised several objections to the settlement. The court addresses these objections below.[2]

First, Mr. Geller asserts that the settlement is based on "worthless coupons that no one is going to use" and fails to satisfy the requirements of a "coupon settlement" under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1712.  (Obj. at 2-4;[3] *see* Obj. Resp. (Dkt. # 36) at 3-9 (responding to this objection).)  CAFA requires courts to apply "heightened scrutiny" when approving "coupon settlements" and to use "specific rules"

---

[1] The court assumes the reader is familiar with the parties' settlement agreement ("Agreement"). (*See generally* Agreement (Dkt. # 26-1).)  Capitalized terms in this order are defined in the Agreement.  (*See id.* § I.)

[2] "An objector to a proposed settlement agreement bears the burden of proving any assertions they raise challenging the reasonableness of a class action settlement." *In re LinkedIn User Privacy Litig.*, 309 F.R.D. 573, 583 (N.D. Cal. 2015).

[3] Mr. Geller offers his own calculations of the benefits provided by the settlement.  (Obj. at 2.)  The court does not address those calculations in this order because they are based on incorrect assumptions about the structure of the settlement.  (*See id.*)

to evaluate fee awards in such cases. *See McKnight v. Hinojosa*, 54 F.4th 1069, 1075 (9th Cir. 2022) (citing 28 U.S.C. § 1712). These rules only apply, however, if the settlement is a "coupon settlement." *Id.* Because "coupon" is not defined in the statute, *see* 28 U.S.C. § 1712, courts review three factors to determine whether the relief offered to the class is a "coupon": "(1) whether class members have 'to hand over more of their own money before they can take advantage of' a credit, (2) whether the credit is valid only 'for select products or services,' and (3) how much flexibility the credit provides, including whether it expires or is freely transferrable." *McKnight*, 54 F.4th at 1075 (quoting *In re Easysaver Rewards Litig.*, 906 F.3d 747, 755 (9th Cir. 2018)).

The court concludes, based on these factors, that the parties' settlement is not a "coupon settlement" within the meaning of CAFA. First, Settlement Class Members will not have to "hand over more money" to take advantage of the Credit Benefits because Defendant's websites offer over 100 products valued at $50 or less, with free shipping on all orders. (*See* 5/31/24 Franzini Decl. (Dkt. # 33) ¶ 23.) Second, although the Credit Benefits can only be used to purchase products available on Defendant's websites, they can be used without restrictions, including on already discounted products. (Agreement § III(C)(5).) And third, the Credit Benefits are valid for three years and are freely transferrable. (*Id.*); *see also McKnight*, 54 F.4th at 1075-77 (concluding that credits offered as part of a settlement were not "coupons" and thus CAFA did not apply). Because this is not a "coupon settlement," CAFA's heightened scrutiny and attorneys' fees requirements do not apply, and Mr. Geller's objection is overruled.

ORDER - 3

1      Second, Mr. Geller argues that the settlement should provide cash refunds based
2 on the amount each Settlement Class Member spent on Defendant's websites during the
3 class period, instead of a flat $50 refund. (Obj. at 3.) Class Counsel respond that a flat
4 refund is appropriate because all of the class members suffered the same harm—they
5 were all misled by Defendant's misrepresentations of the cost of the products on the
6 websites. (Obj. Resp. at 2 n.1.) The court concludes that Mr. Geller's objection simply
7 states his preference for an alternative remedy. This is not, in the court's view, a valid
8 ground for denying final approval of the settlement. *See Linney v. Cellular Alaska*
9 *P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) ("[T]he very essence of a settlement is
10 compromise, a yielding of absolutes and an abandoning of highest hopes." (internal
11 quotation marks and citation omitted)). Therefore, the court overrules Mr. Geller's
12 second objection.

13      Third, Mr. Geller objects that Settlement Class Members should not be required to
14 complete a claim form to receive a Cash Benefit because Defendant knows how much
15 each Settlement Class Member spent on its websites. (Obj. at 3.) According to Mr.
16 Geller, the settlement should instead provide automatic cash payments. (*Id.*) Class
17 Counsel responds that it is "typical and well-accepted" for settlements to offer class
18 members credits as a default remedy with the option to receive cash by filing a claim.
19 (Obj. Resp. at 1-2 (compiling cases).) They point out that in deceptive price advertising
20 cases like this one, there is nothing wrong with the products themselves; instead, the sole
21 problem is that the defendant represented that its products were worth more than they
22 truly were. (*Id.*) As a result, according to Class Counsel, there is no reason to assume

that Settlement Class Members would be dissatisfied with the Credit Benefits. (*Id.*) The court agrees that the structure of the parties' proposed settlement is consistent with many other consumer class action settlements and finds nothing about the settlement that would require the parties to depart from that model. Therefore, the court overrules Mr. Geller's third objection.

Finally, Mr. Geller objects to Class Counsel's attorneys' fee request, asserting that fees measured against a percentage of recovery should be based on the $4.95 million Cash Settlement Fund rather than Class Counsel's inflated $19 million settlement valuation. (Obj. at 4.) He points out that $3.5 million is 71% of the Cash Settlement Fund, and asserts that amount is far too high. (*Id.*) The court agrees with Mr. Geller that Class Counsel's proposed $3.5 million fee award is too high but disagrees that the award should be based solely on the Cash Settlement Fund. As discussed in more detail below, the court sustains in part Mr. Geller's fourth objection and awards Class Counsel $2.875 million in attorneys' fees.

### III.    ATTORNEYS' FEES

"The touchstone for determining the reasonableness of attorneys' fees in a class action is the benefit to the class." *Lowery v. Rhapsody Int'l, Inc.*, 75 F.4th 985, 988 (9th Cir. 2023). District courts "have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011). A district court can employ either of two methods to calculate a fee award—the lodestar or a percentage of the recovery. *Kim v. Allison*, 8 F.4th 1170, 1180 (9th Cir. 2021). Although

courts may employ either method, they "often employ the other method as a cross-check that the award is reasonable." *In re Apple Inc. Device Performance Litig.*, 50 F.4th 769, 784 (9th Cir. 2022).

Here, Class Counsel vigorously argue that the court should use "the favored, percentage-of-the-fund method" for determining reasonable attorneys' fees (Fees Mot. at 1) and assert that "[a] lodestar cross-check is unnecessary and counter-productive" (*id.* at 15). The court declines Class Counsel's invitation to disregard the lodestar cross-check. Thus, the court begins by reviewing Class Counsel's request for fees calculated as a percentage of the class recovery, and then cross-checks that amount against the lodestar.

The percentage of recovery approach is generally used "'where the defendants provide monetary compensation to the plaintiffs' and class benefit is easy to quantify." *Kim*, 8 F.4th at 1181. The court must consider the settlement's "actual or anticipated value to the class members, not the maximum amount that hypothetically could have been paid to the class." *Lowery*, 75 F.4th at 988-89; *Kim*, 8 F.4th at 1181 (reversing a fee award where the district court calculated case value assuming a 100% claims rate and failed to consider "the amount of anticipated monetary relief based on the timely submitted claims"). In common fund cases, the benchmark for a reasonable fee award is 25% of the fund. *In re Bluetooth*, 654 F.3d at 942.

In their fees motion and at oral argument, Class Counsel repeatedly asserted that their $3.5 million request amounts to less than 18.4% of a total settlement value of over $19 million. They calculate this valuation by adding the $4.95 million Cash Settlement Fund (which covers claimed Cash Benefits, attorney's fees and costs, administrative

costs, and incentive awards) to the total value of the $50 Credit Benefits sent to Settlement Class Members who did not submit claims for Cash Benefits. As the court pointed out at the final approval hearing, Class Counsel's $19 million valuation depends on (1) valuing the Credit Benefits the same as cash and (2) assuming that 100% of the class will redeem their Credit Benefits. The court finds that these assumptions are unreasonable.

In the court's view, a more realistic (but still generous) estimate of the total benefit to the class would be based on the number of Credit Benefits redeemed. *See, e.g.*, *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1054 (9th Cir. 2019) (applying CAFA principles to a non-coupon settlement and reversing settlement approval and fee award where district court failed to scrutinize the parties' claimed settlement valuation). Here, Class Counsel's research indicates that approximately 44.4% of customers who purchase items from Defendant's websites make a second purchase within three years. (*See* 8/30/24 Franzini Decl. (Dkt. # 35-1) ¶ 20.) As Class Counsel recognized at the final approval hearing, if approximately 44.4% of the Settlement Class redeem their Credit Benefits, the result would be a total credit redemption value of about $6.5 million and a total settlement value, including the $4.95 million Cash Settlement Fund, of about $11.5 million. Class Counsel's requested $3.5 million award is about 30.4% of that total—more than the Ninth Circuit's 25% benchmark.

To perform the lodestar cross-check, the district court "multiplies the number of hours the prevailing party reasonably spent on litigation by a reasonable hourly rate to determine a presumptively reasonable fee award." *Kim*, 8 F.4th at 1180. The court can

1 then adjust the lodestar amount to account for "the quality of representation, the benefit 2 obtained for the class, the complexity and novelty of the issues presented, and the risk of 3 nonpayment." *Id.* at 1180-81 (quoting *In re Bluetooth*, 654 F.3d at 941-42). At the 4 September 30, 2024 hearing, the court found that Class Counsel's hourly rates and hours 5 worked were reasonable. (*See* 8/30/24 Franzini Decl. ¶ 26 (setting forth Class Counsel's 6 rates and hours worked).) Class Counsel's requested $3.5 million award, however, 7 represents a lodestar multiplier of 3.94 based on hours worked as of August 29, 2024 (*see* 8 *id.*), which the court found was unreasonably high.

9       The court concludes that an award of 25% of the more realistic $11.5 million 10 settlement valuation is appropriate here. This award amounts to $2.875 million, or a 11 lodestar multiplier of 3.24 based on the hours worked as of August 29, 2024. *See, e.g.,* 12 *McKnight*, 54 F.4th at 1074-75, 1077 (affirming the district court's reduction of the fee 13 award from the requested 4.14 lodestar multiplier to a 2.9 lodestar multiplier where 14 counsel's request would have "overcompensated class counsel compared to their 15 lodestar"). The court finds that this award will adequately compensate Class Counsel for 16 their efforts in achieving the settlement and the risks they took in pursuing this litigation 17 without resulting in a disproportionate fee award. The court also finds that the lodestar 18 multiplier is consistent with those awarded in similar cases and is sufficiently high as to 19 not disincentivize attorneys from pursuing class action litigation. *See Vizcaino v.*

1  *Microsoft Corp.*, 290 F.3d 1043, 1051 n.6 (9th Cir. 2002) (noting that the lodestar

2  typically ranges from 1.0% to 4.0% in common fund cases).[4]

### IV.  CONCLUSION

For the reasons set forth above and on the record during the September 30, 2024 final approval hearing, the court GRANTS Plaintiffs' motion for final approval of their class action settlement (Dkt. # 35) and GRANTS in part Plaintiffs' motion for attorneys' fees, costs, and incentive awards (Dkt. # 32).  The court ORDERS and makes the following findings and determinations:

1. The court has personal jurisdiction over all of the Parties to this Action, including Settlement Class Members.  The court has subject matter jurisdiction over this Action, and all matters related to the Settlement.

2. The Settlement Agreement (Dkt. # 26-1 ("Agreement")), is incorporated by reference into this order and is adopted by the court.

<u>Approval of Notice and Settlement Administration</u>

3. Direct notice was distributed to Settlement Class Members as ordered in this court's Preliminary Approval Order (Dkt. # 31).

4. The court finds that Notice was disseminated in a manner that: (a) constituted the best notice practicable under the circumstances; (b) was reasonably

---

[4] The court has reviewed Class Counsel's cited cases, including *Hendricks v. Starkist Co.*, which Class Counsel discussed in the final approval hearing.  No. 13-cv-00729-HSG, 2016 WL 5462423 (N.D. Cal. Sept. 29, 2016), *aff'd sub nom. Hendricks v. Ference*, 754 F. App'x 510 (9th Cir. 2018); (*see also* Obj. Resp. at 10-12 (compiling cases)).  The court concludes that none of Class Counsel's cited cases require the court to depart from the analysis presented in this order.

calculated to inform all Settlement Class Members of this Action, of the terms and effect of this Settlement, of their right to opt out of or object to this Settlement, of the final approval hearing, of Class Counsel's fees and costs request, and of the Class Representatives' request for incentive awards; (c) constituted adequate and sufficient notice to all Settlement Class Members; and (d) satisfied the requirements of the United States Constitution, Rule 23 of the Federal Rules of Civil Procedure, and all other applicable law.  The court notes that between email and U.S. Mail, the notice program resulted in near-universal notice to Settlement Class Members.  (*See* Marra Decl. (Dkt. # 35-2) ¶ 13 (explaining that over 99% of Class Members received notice).)

5. The notices provided all relevant information concerning the claims, the Settlement's terms and impact, and Settlement Class Members' ability to opt out of or object to the Settlement.  (*See* Agreement, Exs. A, B, D.)  In addition to distributing direct notice, the Settlement Administrator established and ran a Settlement Website that provided additional information to Class Members.  The Parties also directed the Settlement Administrator to send a second reminder email prior to the Claim Deadline to ensure Settlement Class Members who wanted to file claims for cash had ample opportunity to do so.  In sum, the court finds that thorough and effective Notice was successfully administered.

6. The court also finds the Settlement Administrator's $54,000 in estimated costs for notice and administration are fair and reasonable, and confirms Simpluris Inc. as the Settlement Administrator.

Certification of the Settlement Class

7.  Pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3), the court finally certifies the following Class, for settlement purposes only:

- All persons who, while in the State of California, purchased one or more products advertised as being subject to a purported discount on Defendant's websites Blinds.com, JustBlinds.com, and AmericanBlinds.com from January 26, 2020, to December 5, 2023 ("California Settlement Subclass"); and

- All persons who, while in the State of Washington, purchased one or more products advertised as being subject to a purported discount on Defendant's websites Blinds.com, JustBlinds.com, and AmericanBlinds.com from August 9, 2019, to December 5, 2023 ("Washington Settlement Subclass").

8.  This Class is the same as was conditionally certified in the court's Preliminary Approval Order.  (*See* Dkt. # 31 at 3.)  The court again finds that this Settlement Class satisfies the requirements of Rule 23(a) and 23(b)(3).

9.  First, the Settlement Class, which consists of more than 300,000 members, is so numerous that joinder of all Settlement Class Members in a single action is impracticable.  Second, there are numerous common questions of law and fact, and these common questions predominate over all individual questions.  Third, the claims of the two Class Representatives are typical of the Settlement Class.  Fourth, the Class Representatives, along with Class Counsel, have no conflicts with Settlement Class Members and have fairly and adequately represented the Class's interests.  Finally,

because the claims are numerous and relatively low in value, a class action is a superior mechanism for their resolution.

<u>The Settlement Warrants Final Approval</u>

10. Pursuant to Rule 23(e)(2) of the Federal Rules of Civil Procedure, the court grants final approval of the Settlement.

11. Under the Agreement, each Settlement Class Member will receive a direct benefit of at least $50—in either cash or store credit (to be used on any purchase from Defendant's three websites at issue in this case). Settlement Class Members who did not file a claim will automatically receive a store credit. Those who choose to file a claim will receive their benefit in cash. In addition, pursuant to the Settlement, Defendant has modified its price advertising. This is an excellent outcome for the Settlement Class and compares favorably to settlements in similar class actions.

12. Both the Class Representatives and Class Counsel adequately represented the Class and recommended this Settlement. The Class Representatives actively participated in the Action and provided valuable service to the Class. And Class Counsel vigorously negotiated this Settlement. *See* Fed. R. Civ. P. 23(e)(2)(A). Because Class Counsel has substantial experience litigating class actions, including a special expertise in cases alleging deceptive price advertising such as this one, Class Counsel's recommendation of this Settlement is entitled to weight.

13. For these reasons, the court reaffirms its preliminary appointment of Tracey Liu and Kristie Rudham as Class Representatives, and Dovel & Luner LLP as Class Counsel.

14. The Settlement was negotiated at arm's length with the aid of an experienced mediator. The Parties participated in two mediations and then continued to negotiate, through the mediator, until finally accepting the mediator's proposal. Prior to mediation, the Parties exchanged significant information, including detailed financial and sales records from Defendant. Class Counsel also represents that it engaged experts to assist with the damages and liability analyses and continued to monitor and document Defendant's price advertising. Thus, the Parties approached negotiations with sufficient information to thoroughly evaluate the value of the case and potential agreements. *See* Fed. R. Civ. P. 23(e)(2)(B).

15. The settlement is fair, reasonable, and adequate in light of the costs, risks, and delay of continued litigation. The Parties vigorously contest liability and damages in this Action, and, without settlement, the Plaintiffs would face numerous obstacles at each stage of litigation. Plus, regardless of Plaintiffs' future success, continued litigation would impose additional expense and delay that could undercut any potential recovery for the Class. *See* Fed. R. Civ. P. 23(e)(2)(C)(i).

16. The proposed method of distributing relief to the class is reasonable and favors settlement. *See* Fed. R. Civ. P. 23(e)(2)(C)(ii).

17. The "subtle signs" of collusion set forth in *In re Bluetooth*, 654 F.3d at 946, are not present in this settlement. First, although high, Class Counsel's fees request is not so far beyond the bounds of fee awards approved in this Circuit as to raise concerns about collusion. Second, the Settlement does not include a clear sailing provision—Defendant was entitled to oppose Class Counsel's fee request. (Agreement § III(E)(1).)

1 | Finally, none of the benefits under the Settlement will revert to Defendant. (Agreement
2 | §§ III(C)(3),VIII); *see* Fed. R. Civ. P. 23(e)(2)(C)(iii).

3 |     18.    Finally, the reaction of the Settlement Class favors approval. Despite a
4 | robust notice program, only one Class Member objected to the Settlement, and only four
5 | Class Members opted out. (Marra Decl. ¶¶ 17-19.) The court has considered the
6 | objections filed by the sole objector and overrules those objections for the reasons set
7 | forth above.

8 |     <u>Approval of Attorneys' Fees, Costs, and Incentive Awards</u>

9 |     19.    For the reasons set forth above, the court denies counsel's request for an
10 | award of $3.5 million in fees and awards counsel $2.875 million. As explained above,
11 | this award is based on approximately 25% of an estimated settlement value of $11.5
12 | million and represents a lodestar multiplier of approximately 3.24%

13 |     20.    The court finds that the costs incurred by Counsel were reasonable and
14 | grants Class Counsel's request for $50,279.85 in cost reimbursements.

15 |     21.    The court grants the Class Representatives' request for $2,500 incentive
16 | awards, for a total of $5,000. These awards are justified given the Class Representatives'
17 | active participation in this Action and their service to the Settlement Class.

18 |     <u>Release of Claims</u>

19 |     22.    The Settlement Agreement requires Settlement Class Members to release
20 | all claims that "arise from the same facts and claims alleged in the operative complaint."
21 | (Agreement § III(D)(1).)

22 |

23. This release is sufficiently narrowly tailored. Upon entry of this Order, the claims asserted in this Action, and the Released Claims of each Settlement Class Member, are fully, finally, and forever released and discharged by Settlement Class Members who did not submit valid requests for exclusion, pursuant to the terms of the Settlement Agreement.

Final Judgment and Schedule

24. As a result of the Settlement's Final Approval, Final Judgment is entered based on the Parties' Settlement Agreement. Accordingly, this action is DISMISSED WITH PREJUDICE, with all Parties to bear their own costs and fees except as set forth herein.

25. Notwithstanding the foregoing, and without affecting the finality of this Order in any way, the court shall retain jurisdiction to enforce the terms of the Settlement Agreement, and guarantee that its terms and this Order are carried out.

26. The Clerk is DIRECTED to enter Judgment and close the case.

Dated this 2nd day of October, 2024.

JAMES L. ROBART
United States District Judge